# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DENISE FROBES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 06 C 1305** |
| | ) | |
| **v.** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's motion for judgment on the papers and Defendant's motion for summary judgment. Plaintiff, Denise Frobes ("Claimant"), challenges the decision of Defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), claiming that her denial of Claimant's request for Social Security Disability Insurance Benefits ("DIB") and Disabled Widow's Insurance Benefits ("Widow's Benefits") should be reversed or remanded because the Administrative Law Judge ("ALJ"): (1) rejected the treating physician's opinion that Claimant was unable to work full-time in favor of the ME's opinion; (2) concluded that the Medical Expert's testimony supports a residual functional capacity ("RFC") for light, as opposed to sedentary, work; (3) rejected portions of Claimant's testimony based on credibility; and (4) posed to the Vocational Expert a hypothetical that improperly omitted some of Claimant's limitations. For the reasons stated below, this Court grants Claimant's motion, denies the Commissioner's motion, and remands

the case to the Commissioner for further proceedings consistent with this opinion.

# I.  BACKGROUND FACTS

## A.  PROCEDURAL HISTORY

Claimant filed an application for DIB on February 2, 2004, alleging that she became disabled on January 1, 2003. R. 65-68.  Claimant's application was denied initially and on reconsideration.  R. 22, 28.  On January 13, 2005, Claimant filed an application for Widow's Benefits, which was assigned to ALJ Denise Martin McDuffie, who had previously been assigned to Claimant's DIB application.  R. 11.  The ALJ held a hearing on both applications on June 6, 2005, at which Claimant, Medical Expert Dr. Carl G. Leigh ("ME"), and Vocational Expert William J. Schweihs ("VE") testified. R. 485-517.  Claimant was represented by counsel at the hearing.  R. 485.

On July 8, 2005, the ALJ issued her decision, and determined that Claimant was not disabled.  R. 8-17.  On February 7, 2006, the Appeals Council denied Claimant's request for review.  R. 4-6.

Claimant now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  The parties have consented to this Court's jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c)(1).  The Court conducted an oral argument on November 13, 2006.  Claimant's alleged impairments are: pulmonary embolism[1]; lower extremity chronic

---

[1]"Obstruction or occlusion of pulmonary arteries, most frequently by detached fragments of thrombus from a leg or pelvic vein."  Stedman's Medical Dictionary 558 (26th ed., 1995).

edema[2]; degenerative joint disease; back pain; osteoporosis[3]; chronic venous insufficiency; obesity; and deep vein thrombosis.[4]

## B. HEARING TESTIMONY - June 6, 2005

### 1. Claimant's Testimony

Claimant was fifty-three years old at the time of the hearing. R. 492. She lives with her daughter in Joliet, Illinois. R. 492. Claimant's husband died in late 2004. R. 493.

Claimant is a high school graduate. R. 493. At the time of the hearing, she had been working for Sam's Club as a food demonstrator for almost six years. R. 493, 496. The position required Claimant to stand for her entire eight-hour shift while she cooked, served food, cleaned up, and promoted the featured product to customers. R. 494, 496-98. She also lifted up to thirty or forty pounds as often as five or six times per day. R. 497-98.

Beginning about a year prior to the hearing, Claimant worked only two days per week. R. 494. Claimant reduced the number of days she worked because of pain and swelling in her leg that was made worse by standing. R. 494. According to Claimant, the reduction was prompted by her doctor's (Dr. R.W. Schubert) recommendation that she quit working, or at

---

[2]Edema means "An accumulation of an excessive amount of watery fluid in cells, tissues, or serous cavities." Stedman's at 544.

[3]"Excessive formation of dense trabecular bone and calcified cartilage, especially in long bones, leading to obliteration of marrow spaces and to anemia . . . ." Stedman's at 1270.

[4]Thrombosis is defined as "Formation or presence of a thrombus; clotting within a blood vessel which may cause infarction of tissues supplied by the vessel." Stedman's at 1809.

least cut down the number of hours she worked. R. 494-95.[5] Claimant's supervisor tried to accommodate her with days off between shifts, but this was not always possible, so Claimant worked consecutive days about half the time. R. 504.

Claimant testified that it was "pretty brutal" to work consecutive days, and she would be in pain by the end of the second consecutive day. R. 498-99. With a day off between shifts, however, Claimant was able "to sit and rest and keep [her] leg up and put the heating pad on it," which reduced the swelling. R. 499. Claimant experienced leg and back pain even with days off between shifts. R. 499.

Claimant suffers from arthritis in her left leg, and she was told to rest her leg when she could and take Tylenol. R. 500. Claimant was unable to function on stronger pain medication. R. 500. Claimant also suffers from deep vein thrombosis in her left leg. R. 501. Her leg was almost constantly swollen, but she experienced some relief by sitting down, elevating her leg, and applying heat. R. 501. She also feels a "hot spot" in the back of her calf. R. 501. Claimant testified that her doctor attributed the swelling in her leg to blood clots and her inability to sufficiently rest her leg. R. 501-02.

To alleviate her leg pain, Claimant elevated her leg as much as she could while at home. R. 503. To the extent normal household duties did not prevent it, Claimant spent time on her days off sitting with her leg elevated on an ottoman. R. 503. This made her leg feel "a lot better." R. 503. On a typical day, she elevated her leg off and on for a total of three

---

[5]At the time of the hearing, Dr. Schubert had been treating Claimant for about five years. R. 495.

4

or four hours.  R. 503.  It is unclear from Claimant's testimony whether by "typical day" she meant a workday, a non-work day, or an average for both.

Claimant also underwent breast reduction surgery in 2003 that successfully alleviated a large amount of back pain.  R. 502.  Claimant testified that her doctor attributed the back pain to her working consecutive days, although she also experienced some back pain even with days off between shifts.  R. 503.

In response to the ME's questioning, Claimant stated that she wears an elastic supportive stocking on her left leg that was prescribed by her doctor, and that she was taking the anticoagulant Coumadin on a life long basis.  R. 506.

### 2.    Dr. Carl Leigh - Medical Expert

Dr. Carl Leigh, an internal medicine specialist, testified as an ME at the hearing.  R. 505-14.  He never examined Claimant.  The ME testified that Claimant suffered from the following medical impairments: hypertension without end organ damage; subnormal capacity ("another way of saying she's just out of condition"); marked obesity approaching morbid obesity; degenerative joint disease of the thoracic spine; osteoporosis with no stress fractures; and deep vein thrombosis ("DVT").  R. 506-07.  He identified Claimant's DVT as most important to her claim, and testified that the medical records supported a conclusion that Claimant suffered chronic venous insufficiency with hyper-pigmentation of her left lower extremity, but there was no evidence of persisting ulcerations or persistent thrombi or clots in the vein.  R. 507.  The ME testified that the DVT began in 2000 or possibly earlier.  R. 507.

The ME concluded that Claimant's impairments do not meet or equal a listing either individually or collectively. R. 507. With respect to functional limitations, the ME testified that in an eight-hour workday Claimant was capable of: occasionally lifting twenty pounds; frequently lifting ten pounds; standing and walking for four hours, but not six; sitting for six hours with an option to sit or stand at will; pushing or pulling occasionally using her left lower extremity; and stooping, crouching, or crawling occasionally. R. 508. The ME testified that Claimant must totally avoid working at hazardous heights or around hazardous machinery. R. 508.

The ME also responded to questions by Claimant's attorney. Claimant's attorney asked whether and with what frequency Claimant would need to elevate her leg if she was working full-time. R. 508-09. The ME answered, "Yes, it would be advisable to do that as often as she can. The question is whether she could do most of that while she was at home. That's a judgment call." R. 509. The attorney then asked, "So you're not sure that it would be a difficulty for her getting through eight-hour workdays without lifting her leg, if she could do it at home?" to which the ME answered, "That's correct." R. 509.

Claimant's attorney also questioned the ME about his conclusion that Claimant could stand or walk for four hours in an eight-hour workday. R. 509. In response, the ME testified that his conclusion of four hours was an average, that given Claimant's condition her ability to stand or walk would vary day to day, and that it was possible that on some days Claimant would be able to stand or walk for only two hours. R. 509.

Finally, the ME testified that his answers "are based upon not only testimony but the

lack of some objective evidence here" and that "we're relying a great deal on testimony here and just an observation that her skin is very dark in the lower area." R. 509. He further explained that there were not many "ongoing venous blood flow tests or any veinograms, [or] x-rays of the veins that demonstrated persistent thrombi." R. 510. When asked whether Claimant's testimony about her difficulties working consecutive days was consistent with the medical records, the ME stated, "I was unable to find anything that would really support that." R. 516.

### 3. William Schweihs - Vocational Expert

William Schweihs, a VE, testified regarding Claimant's past relevant work and existing jobs in the economy that might be suitable for Claimant. R. 510-16. The VE listed Claimant's past relevant work at Sam's Club, as a gas station cashier, performing retail inventory, as a hotel cleaner, and as a drug store cashier, characterizing these positions as the low end of semi-skilled or unskilled and the light range of physical exertion. R. 511-12. The VE stated that Claimant acquired no transferable skills in these jobs. R. 512.

The ALJ then posed a hypothetical to the VE regarding available jobs, and gave the following limitations: Claimant's age, education, and work experience; capacity of lifting twenty pounds on an occasional basis and ten pounds on a frequent basis; ability to stand and walk four hours out of an eight-hour workday and sit six hours per day if given a sit/stand option at will; capacity for occasional pushing and pulling of the left lower extremity; capacity for occasional stooping, crouching, crawling and kneeling; and a need to avoid hazards, unprotected heights, moving parts, and open flames. R. 512. The VE testified that

such a person would be unable to perform any of Claimant's past relevant work because all of those positions require continuous standing for more than four hours per day. R. 512.

The VE identified other jobs in the national economy for such a person. These available jobs were "at the lower than the full range of light work," and included about 2,000 packaging and 2,000 assembly positions in the Chicago metropolitan area. R. 513. The VE also identified 1,500-1,700 cashier positions, which was less than the total number of all cashier positions because Claimant's restrictions could not be accommodated in most cashier jobs. R. 513. The VE characterized all of these available positions as between light and sedentary, but noted that "more would be sedentary but allowing for longer periods of standing and walking." R. 513.

Claimant's attorney questioned the VE about his conclusions. When asked by the attorney whether his conclusion about available jobs would change given an ability to stand and walk for only two hours on some days, the VE testified that his conclusion would not change because he had understood the hypothetical to include the ability to stand or walk for a range of two to fours hours. R. 514. Claimant's attorney also asked whether the VE's conclusion would change given an inability to work a full five days per week. R. 514-15. The VE testified that this limitation would eliminate all of the available positions. R. 515. Finally, Claimant's attorney asked the VE about the ability to elevate one's leg in the available positions. R. 515. The VE answered, "That's a difficult question to answer . . . [and] would be conditioned on how high [the employee] would have to elevate the leg." R. 515. The VE testified that the available jobs could accommodate an elevation of eight to

twelve inches, but that a higher elevation "would be difficult because normally a person then would have to not be facing the work bench or table where they are working," so elevation to full stool or hip level would "virtually eliminate those jobs."  R. 516.

## C.    MEDICAL EVIDENCE - PHYSICAL HEALTH

### 1.    Dr. R.W. Schubert - Claimant's Treating Physician

On January 14, 2004, Dr. Schubert wrote a letter detailing Claimant's medical conditions and their effect on her ability to work.  R. 174.  The letter was addressed "To Whom it May Concern," and the text of the letter is as follows:

> Ms. Frobes has been a patient of mine since September 2000.  She has multiple medical problems that do not allow her to work at this time.  She has history of: Pulmonary Embolism, lower extremity chronic edema, Degenerative joint disease, back pain and Osteoporosis.  I feel at this point because of the nature of her disabilities this precludes her from allowing her to work.

> If there are further problems please feel free to contact my office . . . .

R. 174.  On June 2, 2005, Dr. Schubert added the following handwritten note to the letter: "Condition remains unchanged."  R. 334.

The record contains evidence of extensive visits to Dr. Schubert by Claimant dating back to 2000. *E.g.* R. 331. A large number of these visits were to monitor Claimant's Coumadin treatment, and occurred on a more or less monthly basis since 2000. *E.g.* R. 321, 317, 347. These visits list "PT"[6] and "INR"[7] values and Claimant's current Coumadin dosage. *E.g.* R. 321, 317, 347. The records list "Nurse" next to the form provision for "Provider." *E.g.* R. 321, 317, 347. None of these records contain information about Claimant's symptoms.

With respect to Claimant's DVT, there are several references to edema and chronic stasis in Claimant's left leg. R. 158, 186, 187, 195, 200, 218, 233, 284, 299. One record states that Claimant complained of worse pain in her leg when sitting or walking. R. 186. There are no references to any diagnostic tests related to Claimant's DVT. Nor are there any instructions to Claimant to elevate her leg. The only treatment indicated in the records are use of a support stocking, R. 186, and Coumadin. The remaining medical records are not relevant to Claimant's disability claims.

## 2. Provena Saint Joseph Medical Center

The record includes many diagnostic tests or procedures performed at St. Joseph hospital. St. Joseph performed a stress test on Claimant on July 17, 2003, the results of which indicated that Claimant "appears to have subnormal functional capacity." R. 204-05.

---

[6]"Pro-thrombin time."Stedman's at xxxix.

[7]"International normalized ratio." *Id.* at xxxvii.

On May 13, 2002, Claimant underwent a thoracic spine study, which revealed "[m]oderate degenerative change noted along the lower thoracic spine with mild curvature of the spine present." R. 249. The remaining records from St. Joseph involve such things as brain and abdominal imaging and are irrelevant to the disability claim.

### 3. State Agency Physician

On March 18, 2004, Claimant's medical records were reviewed by Dr. Francis Vincent, a State Agency medical consultant who did not examine Claimant. Dr. Vincent found Claimant capable of: occasionally lifting fifty pounds; frequently lifting twenty-five pounds; standing/walking for six hours in an eight-hour workday; sitting for six hours in an eight-hour workday; unlimited pushing/pulling; unlimited climbing, balancing, stooping, kneeling, crouching, and crawling; and working without environmental limitations. R. 135-42. Dr. Vincent stated that Claimant's DVT "appears to have responded well to treatment and she continues to take Coumadin." R. 142. A second non-examining State Agency physician, Dr. Paul E. Smalley, concurred with Dr. Vincent's opinion on August 4, 2004. R. 142.

## D. THE ALJ'S DECISION - JULY 8, 2005

After conducting the hearing and reviewing the evidence, the ALJ found that Claimant was not disabled within the meaning of the Social Security Act. R. 11-17. Although she determined that Claimant's impairments of chronic edema, pulmonary embolism, marked obesity, degenerative joint disease of the spine, and DVT were "severe," and that Claimant could not perform any past relevant work, the ALJ found that Claimant had the RFC to

perform a limited range of light level work.  R. 16-17.

The ALJ assessed Claimant's applications for DIB and SSI under the five-step sequential analysis.  *See infra*, Part II B (describing the disability standard of review).  Under step one of the disability analysis, the ALJ noted that Claimant was working part time on the date of onset, but declined to decide whether that employment was substantial or gainful because Claimant did not qualify as disabled under step five.  R. 16.

Under the second step, the ALJ found that Claimant's impairments were severe.  R. 16.  At step three, however, the ALJ determined that Claimant's impairments did not meet or equal a listed impairment under the Social Security Regulations.  R. 16.

At step four, the ALJ determined Claimant's RFC.  The ALJ rejected the RFC determination of the state medical consultant.  R 13-14.  The ALJ found that, based on SSR 96-7p, Claimant's testimony about her symptoms and their functional effects was "not entirely credible due to the inconsistencies with the objective medical evidence."  R. 13.  In support of this conclusion, the ALJ noted the ME's testimony that "despite the claimant's leg pain, swelling and blood clotting allegations, there was not a lot of medical evidence to support her allegations, including documented testing or medical documentation of the need to elevate her legs."  R. 13.  The ALJ also rejected Dr. Schubert's opinion that Claimant was unable to work as a result of her medical problems because Dr. Schubert's opinion was "inconsistent with the medical evidence of record and testing, or lack thereof."  R. 14.  Finally, the ALJ noted that "there is no evidence that any of the claimant's alleged impairments caused her to seek emergency room treatments or any inpatient

hospitalizations." R. 14.

Following these credibility and treating physician determinations, the ALJ found that Claimant retained the RFC to perform light exertional work with the following limitations: lifting and carrying objects up to twenty pounds occasionally and ten pounds frequently; standing or walking for four hours in an eight-hour workday; sitting for six hours in an eight-hour workday if given an option to sit or stand at will; occasional pushing and pulling using her left leg; occasional stooping, crouching, crawling, and kneeling; and avoidance of hazards, unprotected heights, moving machinery, and open flames. R. 14-15. The ALJ's RFC did not include a limitation of leg elevation or inability to work consecutive days. The ALJ then concluded that Claimant could not perform her past relevant work. R. 15.

Under step five, the ALJ concluded that Claimant was not disabled because, based on Claimant's RFC and the VE's testimony, approximately 5,500-5,700 packaging, assembly, and cashier jobs exist in the national economy that Claimant could perform. R. 15-16.

## II. LEGAL STANDARDS

### A.    STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir. 1993)**.** Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 816 (7th Cir. 1993). Judicial review is limited to

determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A mere scintilla of evidence is not enough. *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir. 1995). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

While a reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), it may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz,* 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Scivally v. Sullivan,* 966 F.2d 1070, 1075 (7th Cir. 1991)**.** The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B.	DISABILITY STANDARD

Disability insurance benefits ("DIB") are available to a claimant who can establish "disability" under the terms of Title II of the Social Security Act. *Brewer v. Charter*, 103 F.3d 1384, 1390 (7th Cir. 1997). Disabled Widow's Insurance Benefit's ("Widow's Benefits") are available to a widow of a deceased wage earner who has attained the age of fifty, is unmarried (unless certain exceptions apply), and became "under a disability" no later than seven years from the death of the deceased wage earner. 42 U.S.C. § 402(e).[8] "Disability" under the Widow's Benefits provision has the same meaning as for supplemental security income under Title XVI of the Social Security Act. 42 U.S.C. § 402(e)(8). Titles II and XVI of the Social Security Act employ the same definition of "disability." *Brewer*, 103 F.3d at 1390. Thus, "disability" has the same meaning for Claimant's DIB and Widow's Benefits claims.

An individual is "disabled" if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A disabled individual is eligible for DIB or Widow's Benefits, however, only if she is under a disability. 42 U.S.C. §§ 402(e)(8), 423(a), 1382c(a). An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that

---

[8]There are other ways for a surviving spouse to obtain benefits, but they are not at issue in this case. *See* 42 U.S.C. § 402(e).

exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To make this determination, the Commissioner must employ a five step sequential analysis.  20 C.F.R. §§ 404.1520(a)-(f); 416.920(a)-(f).  Under this process, the ALJ must inquire, in the following order:  (1) whether the claimant is engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether he can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *White v. Barnhart*, 415 F.3d 654, 657 (7th Cir. 2005).

## III. DISCUSSION

Claimant raises four issues for judicial review: (1) whether the ALJ erred in rejecting the treating physician's opinion that Claimant was unable to work full-time in favor of the ME's opinion; (2) whether the ME's testimony supports the ALJ's conclusion that Claimant retained an RFC for light, as opposed to sedentary, work; (3) whether the ALJ improperly rejected portions of Claimant's testimony based on credibility; and (4) whether the hypothetical posed to the VE improperly omitted some of Claimant's limitations.

**A.** **THE ALJ DID NOT SUFFICIENTLY EXPLAIN HER DECISION TO REJECT THE TREATING PHYSICIAN'S OPINION**

Claimant argues that Dr. Schubert's testimony was entitled to greater weight, or alternatively that the ALJ did not adequately explain the decision to reject Dr. Schubert's opinion and to adopt the opinion of the non-examining ME. The Court agrees that further explanation is needed.

The opinion of a treating physician is given controlling weight if it is well supported by medically acceptable clinical or laboratory diagnostic testing and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). If the treating physician's opinion is not entitled to controlling weight, it is considered using the factors applied to all medical opinion evidence and may be entitled to deference. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p.

When the treating physician has opined on an issue reserved for the Commissioner, however, the opinion is never controlling or given special significance, because doing so would abdicate the Commissioner's role to treating physicians. 20 C.F.R. § 404.1527(e); SSR 96-5p; *Dixon*, 270 F.3d at 1177. These issues reserved for the Commissioner include statements that the Claimant is "disabled" or "unable to work." *Id.* Even in these circumstances, however, the ALJ may not ignore the treating physician's opinion, but must analyze the opinion in light of the factors applied to any other medical opinion. SSR 96-5p. The factors are: (1) the length of the treatment relationship and frequency of visits; (2) the nature and extent of the relationship, including the treatment given and extent of any

examinations; (3) the supportability of the opinion in light of medical testing and the explanation given by the physician; (4) consistency with the rest of the record; (5) the physician's specialization; and (5) any other factors.  20 C.F.R. § 404.1527(d)(2)-(6).

Finally, the ALJ must articulate the reasons for the weight she has chosen to give the treating physician's opinion, supported by evidence in the record, and with enough specificity to permit subsequent review of the decision.  SSR 96-2p; SSR 96-5p.  If the ALJ concludes that the treating physician's opinion is inconsistent with other evidence, she must explain the inconsistency.  *Clifford*, 227 F.3d at 870-71.

Dr. Schubert's letter makes two statements, and it is important to keep them separate. First, Dr. Schubert stated that Claimant suffers from "Pulmonary Embolism, lower extremity chronic edema, Degenerative joint disease, back pain, and Osteoporosis."  The ALJ determined that Claimant did in fact suffer from these ailments, so this portion of the letter is not an issue.  Second, Dr. Schubert's letter states that Claimant was "unable to work at this time" and characterizes her impairments as "disabilities."  R. 174.  It is this portion of the letter that the ALJ rejected.

The ALJ's opinion states the following about her decision to reject Dr. Schubert's opinion:

> Pursuant to [SSR] 96-2p, I reject the opinion of treating physician, Dr. R.W. Schubert, who opinioned [sic] that the claimant was disabled due to her multiple medical problems, as it is inconsistent with the medical evidence of record and testing, or the lack thereof.

R. 14 (internal citations omitted).  Her opinion went on to credit the ME's testimony that there "was not a lot of medical evidence of record . . . including documented testing or medical documentation of [Claimant's] need to elevate her legs."  R. 14.  The opinion then characterizes the evidence in the record as lacking emergency room treatments or inpatient hospitalizations, but mentions evidence of hyper-pigmentation and Coumadin-level testing.  R. 14.

Clearly Dr. Schubert's statements that Claimant suffered from disabilities and was unable to work are issues reserved to the Commissioner, and were not entitled to controlling weight.  Nonetheless, the ALJ was required to evaluate Dr. Schubert's opinion in light of the factors listed above and to provide specific reasons why she was rejecting the opinion.  The ALJ did address the supportability and consistency factors, but said nothing about the remaining factors that she was required to address by SSR 96-5p and 20 C.F.R.§ 404.1527(d).  Further, while the ALJ included generic language that the opinion was inconsistent with "the medical evidence of record and testing, or lack thereof," the ALJ failed to identify what evidence in the record was inconsistent with Dr. Schubert's opinion, and did not identify with any specificity the evidence that was lacking.  The ALJ referenced emergency room visits and inpatient hospitalizations without explaining why those forms of treatment would be necessary for Claimant's impairments.  Nor did the ALJ analyze the fact that Dr. Schubert had been treating Claimant on an ongoing basis for five years (as contrasted with the ME, who had never examined Claimant).  Therefore, the ALJ insufficiently explained her decision to reject Dr. Schubert's opinion.  Without a more detailed and specific

explanation addressing all of the relevant factors and specifying exactly what medical evidence is lacking and why it is relevant, the Court cannot determine whether the ALJ's decision to reject Dr. Schubert's opinion was proper.

It appears that any confusion about the basis and scope of Dr. Schubert's opinion could have been cleared up by simply contacting Dr. Schubert to either clarify his opinion or provide his own RFC report for the ALJ to consider. Further, to the extent objective medical evidence was lacking, the Commission should have ordered that adequate testing be performed. *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (*citing Smolen v. Chater*, 80 F.3d 1272, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [medical] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.")); *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000) ("Although the Claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record."); SSR 96-2p ("[I]n some instances, additional development required by a case–for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings–may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking . . . ."). The Commissioner is directed on remand to comply with this duty and obtain whatever additional information is needed to evaluate Dr. Schubert's conclusions based on his five year history of treating Claimant.

**B.      THE ALJ'S RFC FINDING OF A RANGE OF LIGHT WORK IS CONSISTENT WITH THE ME'S TESTIMONY, BUT THE ISSUE IS MOOT**

Claimant argues that the ME's testimony does not support the ALJ's finding that Claimant was capable of standing or walking four hours per day, nor the resulting conclusion that Claimant was capable of light work, and asserts that the ALJ should have explained this inconsistency. Claimant also argues that the ALJ should have found an RFC of sedentary based on the ME's testimony that on some days Claimant would be unable to stand or walk for more than two hours. Further, Claimant argues that given her age, work history, and other relevant characteristics, the Medical-Vocational Guidelines (the "grids") would require a finding of disabled had she been limited to sedentary work. In light of the remand to reconsider the rejection of Dr. Schubert's opinion in favor of the ME's, this issue is moot. For the sake of completeness, however, the Court will analyze the issue.

An exertional level applies to a claimant if the claimant is capable of performing "at least substantially all of the activities of work" at that exertional level, but incapable of substantially performing work at a higher exertional level. SSR 83-10. If a claimant falls within an exertional level, a finding of disabled or not disabled may be dictated by the grids based on the claimant's age, education, and previous work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Where a claimant falls between exertional levels, the disability determination must be made "on the basis of the principles and definitions in the regulations," but using the grids as guidance *Id.* An ALJ's RFC assessment "must include

a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."

The ALJ concluded that Claimant's RFC was "a significant range of light work." R. 15. This conclusion was based, in part, on the ALJ's opinion that Claimant "is able to stand and walk for four hours in an eight-hour workday." R. 15. Claimant is correct that this conflicts with the ME's testimony that Claimant could stand or walk for only two hours on some days, with four hours as an average. The ALJ should have explained this inconsistency. *See* SSR 96-8p (ALJ must "explain how any material inconsistencies or ambiguities in the case record were considered and resolved"). Nonetheless, the outcome clearly would not have changed.

While Claimant is correct that sedentary work requires standing or walking for no more than two hours per day, and that the full range of light work would require the ability to stand or walk for six hours per day, SSR 83-10, there are many factors relevant to an RFC assessment other than ability to walk or stand, such as pushing, pulling, and lifting. Claimant does not dispute that she retained, for example, the capacity to lift frequently up to ten pounds or lift occasionally up to twenty pounds. Therefore, Claimant clearly exceeds many of the criteria for sedentary work, and would not qualify for that RFC based on the ME's testimony, so a finding of disabled was not dictated by the grids.

Rather, having credited the ME and rejected the treating physician, the ALJ correctly found Claimant capable of performing "a significant range of light work" and specifically noted that Claimant was not capable of the full range of light work. This placed Claimant

between exertional levels, and made necessary the VE's testimony that a number of jobs existed for someone with Claimant's particular limitations. The VE's testimony accounted for the two to four hour range of standing and walking. R. 514 ("I'm understanding two to four, yes."). Therefore, the inconsistency between the ME's testimony and the ALJ's opinion does not warrant remand. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). If, after reconsideration in light of this opinion, the ALJ justifiably credits the ME's opinion over the treating physician's, the ALJ could correctly find an RFC of a range of light work.

## C. THE ALJ'S OPINION INSUFFICIENTLY EXPLAINED THE DECISION TO REJECT CLAIMANT'S TESTIMONY AS NOT CREDIBLE

Claimant argues that the ALJ improperly rejected as not credible her testimony that she was unable to work consecutive days and needed to elevate her leg, and alternatively argues that the ALJ did not sufficiently explain the decision to reject Claimant's testimony. The Court agrees that a more detailed explanation and consideration of additional factors is required.

An ALJ's credibility determination is entitled to special deference, and is upheld unless "patently wrong." *E.g. Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). The ALJ's discretion is not unlimited, however, and the ALJ must undertake a thorough examination and explanation when making credibility determinations. The ALJ must

"carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record."  SSR 96-7p.  "An individual's statements about the intensity and persistence of [symptoms] or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  *Id.*  Further, the ALJ's opinion "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight."  *Id.*  In reaching a credibility decision, the ALJ must consider a list of factors that includes, among other things, the individual's daily activities, factors that aggravate the symptoms, treatment, and  other measures taken by the claimant to alleviate symptoms.  *Id.*  The ALJ must also consider the consistency of the testimony with both other statements made by the claimant and other information in the case record.  *Id.*

The ALJ's opinion states the following with respect to her decision about Claimant's credibility: "Testimony by the claimant as to the symptoms and their functional affects [sic] was evaluated using the criteria of SSR 96-7p and found not entirely credible due to the inconsistencies with the objective medical evidence."  R. 13.  The ALJ seems to have relied on the ME's testimony in reaching this conclusion, noting that the ME testified that "despite the claimant's leg pain, swelling and blood clotting allegations, there was not a lot of medical evidence to support her allegations, including documented testing or medical documentation of the need to elevate her legs."  R. 13.

24

While the opinion mentions the criteria of SSR 96-7p, the ALJ did not discuss any of the criteria other than the inconsistencies with the objective medical evidence. The inconsistencies were not identified, and while the ME's testimony is mentioned, it was cited by the ALJ to show a lack of objective medical evidence supporting Claimant's alleged need to elevate her legs. In essence, it seems that the inconsistent evidence is actually the ME's testimony that there is a *lack* of evidence. This is but a roundabout way of improperly rejecting Claimant's testimony solely on the basis of a lack of objective medical evidence and not truly an inconsistency. *See* SSR 96-7p ("An individual's statements about the intensity and persistence of pain or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). The opinion does not satisfy the requirements of SSR 96-7p, and remand is necessary so that the ALJ can identify any actual inconsistencies and specifically discuss the relevant SSR 96-7p criteria that she mentioned in passing.

While the Court will not draw its own conclusion about Claimant's credibility at this point, it should be considered on remand that even the ME, on whose testimony the ALJ relied so heavily, agreed that Claimant would need to elevate her leg. In response to questioning by the Claimant's attorney regarding the need to elevate the leg, the ME stated, "Yes, it would be advisable to do that [elevate the leg] as often as she can. The question is whether she could do most of that while she was at home; that's a judgment call." R. 509. The ME further testified that he was unsure whether it would be difficult for Claimant to get through an eight-hour workday without elevating her leg. R. 509. This hardly appears

inconsistent with Claimant's testimony, and actually lends Claimant support.

**D.    THE COMPLETENESS OF THE HYPOTHETICAL POSED TO THE VE IS ACADEMIC**

Claimant argues that the hypothetical posed to the VE was incomplete because it omitted certain of Claimant's limitations–her inability to work full-time and her need to elevate her leg at the level of her hip.[9]   The VE testified that if either of these limitations were present, there would be no jobs for Claimant.   Further, with respect to her inability to work full-time, a VE's testimony would not be needed to establish disability since the regulations themselves make clear that Claimant would be disabled.   SSR 96-8p (defining RFC in terms of full-time work only).

---

[9]There is no completeness issue regarding Claimant's standing and walking limitations (*i.e.,* four hours versus a range of two to four hours) because the VE found that the same jobs would be available to someone capable only of the two to four hour range.

## IV.  CONCLUSION

For the reasons set forth in this opinion, Plaintiff's motion for judgment on the papers is granted, the Commissioner's motion for summary judgment is denied, and the matter is remanded to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED THIS 20th DAY OF NOVEMBER, 2006.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

M. Jacqueline Walther
Kielian and Walther
33 W. Jackson, Ste. 201
Chicago, IL 60604

Counsel for Plaintiff

James Hail
Assistant Regional Counsel
200 W. Adams St.
Suite 3000
Chicago, IL 60606

Jack Donatelli
Assistant United States Attorney
219 S. Dearborn
Chicago, IL 60604

Counsel for Defendant